EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
ALLAN YANNOW
Deputy Attorney General
State Bar No. 63257
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-3664
  Telephone: (415) 703-5955
  Fax: (415) 703-1234
  Email: allan.yannow@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **PATRICK M. BAYLIS,** | C 07-5791 CRB (PR) |
| Petitioner, | |
| **v.** | |
| **JAMES TILTON,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
ALLAN YANNOW
Deputy Attorney General
State Bar No. 63257
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-3664
  Telephone: (415) 703-5955
  Fax: (415) 703-1234
  Email: allan.yannow@doj.ca.gov
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **PATRICK M. BAYLIS,** | C 07-5791 CRB (PR) |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |
| **v.** | |
| **JAMES TILTON,** | |
| Respondent. | |

## STATEMENT OF THE CASE

The Court of Appeal described the procedural posture of the case as follows:

> In October 2003, the District Attorney for the County of Alameda filed a second amended information alleging that defendant Patrick Baylis committed four counts of rape (Pen.Code, § 261, subd. (a)(2); counts 1-4), one count of penetration with a foreign object (§ 289; count 5), one count of forcible oral copulation (§ 288a, subd. (c); count 6), one count of kidnapping with the intent to commit rape or oral copulation (§ 208, subd. (d); count 7), and one count of robbery (§ 211; count 8). As to counts one through six, it was alleged that defendant kidnapped the victim and that the movement of the victim substantially increased the risk to her (§ 667.61, subds. (d)(2) and (e)(1)) and that defendant personally used a firearm (§§ 667.61, subd. (e)(4), 12022.3). As to counts seven and eight, it was alleged that defendant personally used a

1
2
firearm. (§ 12022.5.) . . . A jury found defendant guilty on all counts and found that all the alleged enhancements were true. In April 2004, the trial court imposed a total prison term of 44 years to life.

3
Exh. H at 2. [footnote deleted.)

4
The Court of Appeal affirmed the conviction. Exh. H.

5
On September 13, 2006, the California Supreme Court denied review. Exh. J.

6
On November 14, 2007, petitioner filed a petition for writ of habeas corpus. On February 12,

7
2008, this Court issued an Order to Show Cause.

8

9
## STATEMENT OF FACTS

10
The Court of Appeal described the facts of the offense as follows:

11
**The Prosecution's Case**

12
13
14
In the morning of February 23, 1997, as the victim was walking to work, a man she described as Black and heavyset walked toward her. He grabbed her arm, put his hand over her mouth, and put a gun to her cheek. He told her not to scream or he would kill her, and he told her to keep walking.

15
16
17
18
They walked through a parking lot and he covered her face with her jacket. The assailant forced her into a car and drove her to an apartment in Hayward. He led her to a walk-in closet, covered her eyes with a t-shirt, and told her to take off her clothes. He forced her to have intercourse in the closet and on a mattress in another room, and, holding a gun to her head, made her orally copulate him. As the assailant handed the victim her clothes, she heard him go through her pockets. She later discovered that approximately seventeen dollars were missing. The assailant told the victim that he should just kill her, led her back to the mattress, and forced her to have intercourse again.

19
20
21
They left the apartment. The assailant drove for a while and told the victim to get out of the car. She contacted the police, describing her assailant as a Black male in his early 30's, five feet five inches tall, about 200 pounds, with a full beard and closely cut hair.

22
23
24
In a photo lineup, the victim picked out defendant's brother, Rodney Baylis, as her assailant. She was not confident of the identification, although she did not say so that day to the detective in charge of the investigation, Frank Daley. She did tell Audrey Pinkney, who accompanied her to the police station, that the photo she picked out resembled her assailant but that she did not really think it was him.

25
26
27
28
One night about a month later, the victim saw the car her assailant had driven parked across the street from her house. She saw three men approach the car and told Pinkney, with whom she was living, that one of the men was her assailant. They called the police, who arrived soon afterwards and drove the victim and Pinkney to where the car had been stopped by other officers. The

victim identified defendant as her assailant. One of the officers said she was confusing defendant with his brother, but the victim never changed her mind.

Because Detective Daley had identified Rodney as the primary suspect in the rape, defendant was not taken into custody. Another officer who was present during the identification admitted that he falsely wrote in his report that the victim did not make an identification. He testified that Daley asked him to write a supplemental report falsely stating that the victim reported that the person the police had detained looked like the assailant but that the assailant was actually shorter (defendant is over six feet tall and Rodney is approximately five and a half feet tall). A couple of days later the victim told Daley that defendant was her assailant; he corrected her, admonishing that her assailant was actually the defendant's brother, whom she had identified in the photo line-up.

Rodney was charged with the rape, along with separate sexual assaults in Alameda and Oakland. At the preliminary hearing in August 1997, the victim identified Rodney as the person who had raped her. However, she had concerns about the accuracy of her identification. After the hearing, she told Pinkney that the man she identified was not her assailant. When she made the identification during the hearing, she trusted Daley's judgment more than her own.

In June 1999, DNA analysis of a semen sample on the victim's underpants excluded Rodney. Defendant and the victim's boyfriend, Robert Pinkney, could not be excluded as sources of the semen. Assuming Robert Pinkney was one source of the semen, the odds of a person taken at random being another contributor were approximately one in 690 billion Caucasian males and one in 10 billion African-American males. Not assuming that Robert Pinkney was a source of the semen, the odds of a person taken at random being one of the contributors was one in 8,200 Caucasian males and one in 890 African-American males.

Based on information obtained from a car dealership, the police determined that the car the assailant drove matched the description of a 1996 Hyundai registered to a Cathrell Golston. The investigation also led the police to an apartment on Vermont Street in Hayward, which the victim subsequently identified as the location where she was raped. The victim's and defendant's fingerprints were found in the Vermont Street apartment; Rodney's were not. Golston lived in the Vermont Street apartment but moved out before February 23, 1997. Golston previously was in a romantic relationship with defendant. The romantic relationship ended in December 1996, but she continued to allow defendant to drive her car and defendant had keys to the Vermont Street apartment. Rodney had never been to the apartment.

**The Defense Case**

Defendant challenged the victim's identification. The parties stipulated that a victim-witness assistance counselor would testify that the victim never told her that Rodney was not her assailant and did not express any doubt about the identification of Rodney. Similarly, defendant's sister testified that she saw the victim at Rodney's preliminary hearing, and the victim saw defendant and did not say anything about him.

Defendant testified he denied raping, kidnapping, or having any contact with the victim. He did admit that he had a key to Golston's apartment on

1    Vermont Street and that he drove her car with her permission. The night before
2    the victim was kidnapped and raped, the defendant picked up Rodney from a
     BART station and gave him Golston's car, as well as the keys to the apartment
3    on Vermont Street. Later that night, defendant and two friends, Mike and
     Tanya, went to a bowling alley in Hayward. Afterwards, they went to the
     Vermont Street apartment, and defendant had sex with Tanya. Defendant left
4    the apartment early the next morning.

5        In February 1997, defendant's hair was about three or four inches long, not
     closely cut. He had a goatee but not a full beard. He went to the police
6    department voluntarily after he heard the police were looking for Rodney. He
     was interviewed by two detectives but was not arrested.

7

8    Exh. H at 2-5.

9                        **STANDARD FOR REVIEW**

10        This Court reviews the state court's ruling under a "highly deferential" standard imposed by

11   the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v. Visciotti*, 537

12   U.S. 19, 24 (2002) (per curiam). A federal court has no authority to grant habeas relief unless the

13   state court''s ruling was "contrary to, or involved an unreasonable application of," clearly

14   established Supreme Court precedent. 28 U.S.C. §§ 2254(d)(1). A decision constitutes an

15   "unreasonable application" of Supreme Court law if the state court's application of law to the facts

16   is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams v. Taylor*, 529

17   U.S. 362, 413 (2000). A state court''s ruling based on a factual determination also must be

18   'objectively unreasonable' in light of the record" to warrant habeas relief. *Miller-El v. Cockrell*, 537

19   U.S. 322, 348 (2003); 28 U.S.C. § 2254(d)(2). The petitioner bears the burden of showing that the

20   state court's decision was unreasonable. *Visciotti*, 537 U.S. at 25. If this Court finds a constitutional

21   violation, relief may be granted only if the error had a substantial and injurious effect on the verdict.

22   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

23                              **ARGUMENT**

24                                 **I.**

25   **THE STATE COURT'S FINDING THAT COUNSEL OF
     CHOICE SUFFERED FROM A CONFLICT OF INTEREST
26   THAT WAS NOT EFFECTIVELY WAIVED WAS NOT AN
     UNREASONABLE APPLICATION OF CLEARLY
27   ESTABLISHED FEDERAL LAW**

28        Petitioner contends that the trial court deprived him of his right to counsel of choice when

1   it denied his request to allow Richard Hove to substitute in as counsel.   The court found a conflict

2   of interest because Hove had represented petitioner's brother Rodney Baylis, and because the

3   strategy of the defense in this case was likely to be that Rodney rather than petitioner had committed

4   the crimes.  The court found that the conflict of interest had not been effectively waived and denied

5   the request to substitute in Mr. Hove.

6          The Court of Appeal described the facts underlying petitioner's claim as follows:

7                  In 2003, well before trial, defendant requested that Richard
        Hove be substituted as counsel of record in place of appointed
8       counsel, Michael Berger. The prosecutor opposed the request on the
        ground that Hove had previously represented Rodney in prosecutions
9       for sexual assaults that occurred in Alameda in August 1996 and in
        Oakland in April 1997. The rape at issue in this case occurred in
10      Hayward in February 1997. Originally Rodney was charged with the
        Hayward offenses as well, and the victim identified Rodney as her
11      assailant at the preliminary hearing, but the charges were dismissed
        after DNA analysis implicated defendant.
12
                Hove never represented Rodney in relation to the Hayward
13      offenses. Rodney's attorney at the preliminary hearing on the charges
        arising out of the Alameda, Oakland, and Hayward incidents was
14      Roger Patton. Hove represented Rodney at trial for the Alameda and
        Oakland incidents. Hove raised a mistaken identity defense and
15      pointed to Patrick as the assailant who committed the Oakland sexual
        assault. Rodney testified that the last time he had seen the gun used
16      in the Oakland assault Patrick had it. Hove attempted to question
        Rodney about the misidentification in *this* case, but the trial court did
17      not allow the questioning. Hove called Patrick as a witness, and he
        admitted ownership of the gun used in the Oakland assault but
18      refused to answer whether he took the gun to the store where the rape
        took place; the trial court struck Patrick's testimony about the gun. In
19      closing, Hove argued that Patrick was responsible for the Oakland
        assault. Rodney was convicted of both the Alameda and Oakland
20      offenses.

21              The trial court found that an actual conflict of interest would
        exist were Hove to represent defendant. The trial court explained:
22      "Rodney Baylis, defendant's brother, was originally identified as the
        perpetrator of the crimes for which defendant now stands accused.
23      The sexual assault in Oakland, for which Rodney Baylis was
        convicted, occurred within a few months of the instant incident.
24      Therefore, notwithstanding the alleged DNA evidence, mistaken
        identification remains a potentially viable defense in this case.
25      Defendant admits that he may introduce evidence that his brother,
        Rodney Baylis, committed the offenses in this case. . . Mr. Hove will
26      be placed in the untenable position of presenting evidence inculpating
        his former client, Rodney Baylis, directly contradicting the position
27      taken at Rodney Baylis' trial, in which Mr. Hove attempted to prove
        that Patrick Baylis committed this rape. (The Court notes that double
28      jeopardy has not attached to Rodney Baylis in this case.) [¶¶] Other

potential conflicts of interest exist. The District Attorney asserts that he may call Mr. Hove as a witness in this case because, during Mr. Hove's representation of Rodney Baylis, Mr. Hove had discussions with the defendant Patrick Baylis regarding the events involving the instant charges. Those discussions are not privileged attorney client communications because the defendant was not Mr. Hove's client at the time. Furthermore, the District Attorney points out the possibility that Mr. Hove's privileged communications with Rodney Baylis may be subject to disclosure at trial, given that Rodney Baylis, as Hove's former client, must also waive the conflict."

Defendant submitted two declarations purporting to waive the conflict of interest. The court appointed independent counsel to advise defendant regarding the conflict. Independent counsel was charged with explaining to defendant the "existence, implications, and ramifications of having Mr. Hove represent him in this matter and to explain the consequences of defendant's purported waiver of conflict-free counsel." The trial court held two hearings on the issue and questioned defendant extensively regarding his understanding of Hove's conflict of interest at each hearing. Ultimately, the trial court found that defendant knowingly and intelligently waived the conflict of interest.

However, the trial court denied the substitution request because it found that Rodney had not adequately waived the conflict. The court concluded that the Rules of Professional Conduct required Hove to obtain Rodney's consent before undertaking the representation of defendant. The court emphasized its "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." The sum of Rodney's declaration read, "I understand that Patrick Baylis is now seeking to have Mr. Hove represent him. Since I was represented by Mr. Hove and was charged with these offenses, I have been advised that a conflict of interest may exist with Mr. Hove representing Patrick Baylis. I am aware of this and herby [sic] waive any conflict of interest regarding same." After explaining the inadequacy of Rodney's waiver and reviewing case authority, the trial court concluded: "Mr. Hove's former client, Rodney Baylis, has not submitted an intelligent and knowing waiver of the conflict of interest nor has he waived the confidentiality of his attorney-client communications. When representing Rodney, Mr. Hove attempted to place responsibility for the instant charges upon defendant. Now, he seeks to implicate his former client for these crimes. To that end, Mr. Hove will have the benefit of what he learned when he represented Rodney at trial. Mr. Hove may be called to testify in this case and could possibly be forced to disclose privileged communications. Under these facts, the Court finds Rodney Baylis' written waiver to be wholly insufficient and further finds that Mr. Hove's representation of Patrick Baylis, if allowed, poses a significant threat to the integrity of the judicial process."

Exh. H at 6-9.

The Court of Appeal then rejected petitioner's contention, stating the following regarding

the existence of a conflict of interests:

Defendant contends that the trial court erred in concluding that there was a conflict requiring a waiver from Rodney. We disagree. Professional ethics demand that an attorney avoid conflicts of interest in which duties owed to different clients are in opposition.(*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282 & fn.2, 36 Cal.Rptr.2d 537, 885 P.2d 950 (*Flatt* ); State Bar Rules Prof. Conduct, rule 3-310.)

A conflict of interest may arise from an attorney's concurrent or successive representation of clients with adverse interests. [Citations.] These two situations implicate distinct ethical concerns and public policies. ( *Ibid.*)

The trial court focused on rule 3-310(C), which relates to concurrent representation and requires informed written consent from clients where an attorney seeks to represent in a single matter multiple clients with potential or actual conflicts or where an attorney seeks to represent clients with adverse interests in separate matters. (Rule 3-310(C).)

Concurrent representation of clients with adverse interests compromises an attorney's duty of loyalty. [Citations.] Defendant contends that his substitution request did not implicate rule 3-310(C) because Hove did not seek to represent defendant and Rodney concurrently either in a single matter or in separate matters. Respondent counters only that the "record does not affirmatively show that Hove was not representing Rodney in some capacity" at the time the trial court considered the substitution request. On this record, we cannot determine whether the substitution request would have created a concurrent representation conflict implicating rule 3-310(C).

Whether or not granting the substitution request would have led to a concurrent representation, it is clear that the substitution request implicated ethical concerns applicable to the successive representation of clients with adverse interests. (See rule 3-310(E).) In the successive representation context, "the chief fiduciary value jeopardized is that of client *confidentiality,*" not loyalty. [Citations.]The former client's expectation of confidentiality must be preserved to ensure the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense. [Citation.] The attorney must maintain those confidences inviolate and preserve them at every peril to himself or herself. (Bus. & Prof.Code, §§ 6068, subd. (e).) Because of this duty, an attorney in actual possession of material confidential information from a former client may not represent an adverse party without the former client's consent. (Rule 3-310(E).)

Rule 3-310(E) addresses the conflict between a lawyer's duty to use all information at his or her disposal in order to represent a current client competently and the lawyer's continuing duty of loyalty

to a former client with respect to information obtained during the course of the prior representation. (See Cal. State Bar, Com. on Prof. Responsibility, Ethics Opn. No. 1998-152 (1998) p. 5.)

When a conflict arises out of the successive representation of a former and a current client, disqualification turns on whether there is a substantial relationship between the former representation and the current representation. [Citation.] Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory.... [Citation.] A substantial relationship is said to exist when it appears, by virtue of the nature of the former representation or the relationship of the attorney to his former client, that confidential information material to the current representation "would normally have been imparted to the attorney." [Citation.] The court should focus on the similarities in the facts involved in the two representations, the legal questions posed, and the nature and extent of the attorney's involvement in each case. [Citation.]Here, the trial court stated, "When representing Rodney, Mr. Hove attempted to place responsibility for the instant charges upon defendant. Now, he seeks to implicate his former client [Rodney] for these crimes. To that end, Mr. Hove will have the benefit of what he learned when he represented Rodney at trial." Reasonably interpreted, this is an implicit finding that due to a substantial relationship between the two representations, it can be presumed that Hove obtained confidential information material to the prosecution of defendant.

Defendant contends that there is no substantial relationship between the two representations because the charges against Rodney for the Hayward rape had been dismissed by the time Hove became Rodney's attorney.  But defendant disregards the undisputed facts that, in representing Rodney, Hove sought to implicate defendant in the Oakland sexual assault and to introduce evidence of the misidentification of Rodney in the Hayward case.  Both representations involved the Hayward offenses, the subsequent police investigation, and misidentification by the victim;  both representations involved the legal strategy of mistaken identification of the brothers; and Hove was intimately involved with the former representation as trial counsel for Rodney on the Alameda and Oakland offenses. [Citation.]  In preparing for trial, Rodney would normally have imparted confidences to Hove, for example, regarding his whereabouts at the time of the Hayward kidnapping and rape; any involvement he had before, during, or after the crime; his knowledge of any of the persons or locations involved in the crime; any information inculpating or exculpating defendant in the offenses; and any insights he had about mounting a defense based on the physical similarities between the brothers. On the undisputed facts, the trial court properly concluded that there is a substantial relationship between the former representation of Rodney and the proposed representation of defendant. Hove was disqualified from representing defendant, absent an effective waiver of the conflict by Rodney.

Exh. H at 9-12. [Some internal quotation marks deleted.]

The Court then found that Rodney's waiver was ineffective stating:

> Defendant contends that even if there was a conflict of interest arising from Hove's former representation of Rodney, Rodney waived the conflict. The trial court concluded that Rodney's brief written waiver was inadequate, stating "[Rodney's waiver] is not the full and complete, knowing and intelligent waiver that this Court believes is required here. Rodney Baylis does not acknowledge the possibility that his brother, Patrick, will seek to inculpate him as the perpetrator of these offenses. The waiver makes no mention of the possibility that the District Attorney may attempt to call Mr. Hove as a witness or that Mr. Hove may be forced to disclose otherwise privileged attorney-client communications made to Mr. Hove.... The waiver is silent as to the possibility that information that Mr. Hove gained while representing Rodney may be used to assist Patrick, to Rodney's possible detriment. In sum, in contrast to Patrick Baylis' waiver, Rodney's waiver contains no evidence that he is aware of the drawbacks to waiving the conflict of interest."[2/]

> Denial of defendant's substitution request was effectively a determination that Hove was disqualified from representing Patrick. The trial court's power to disqualify an attorney derives from Code of Civil Procedure section 128, subdivision (a)(5), which authorizes a trial court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it...." [Citation.] This section applies in criminal cases, and the trial court's decision is reviewed for abuse of discretion. [Citation.] The trial court's authority to deny a motion to substitute rests on similar grounds and should be given similar deference on appeal. We conclude that the trial court did not abuse its discretion in requiring an *informed* waiver from Rodney in the circumstances of this case. Where a defendant seeks to waive his counsel's conflict of interest, the waiver must be a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.[Citation.} A waiver may be properly taken where the court has assured itself that (1) the defendant has discussed the potential drawbacks of joint representation with his attorney or outside counsel, (2) the defendant has been made aware of the dangers and possible consequences of joint representation in the case, (3) the defendant knows of his right to conflict-free representation, and (4) the defendant voluntarily wishes to waive that right. [Citation.] That exacting standard is calculated to ensure a legitimate waiver of a defendant's

---

2.    [Footnotes 2-4 are renumbered from the Court's opinion.] The trial court was also concerned that the waiver signed by Rodney was too similar to a waiver that was the subject of a reversal by the Ninth Circuit in another case involving Hove and his representation of a criminal defendant where Hove had a conflict. (See *Lockhart v. Terhune* (9th Cir.2001) 250 F.3d 1223.)

constitutional right to conflict-free counsel and to insulate any conviction from a later challenge on appeal based on the conflict. [Citation.]Also instructive is the standard for former client consent under the Rules of Professional Conduct. Rule 3-310(E) requires the former client's "informed written consent" to any subsequent adverse representation implicating the duty of confidentiality. Such consent requires the former client's written agreement to the representation following written disclosure of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the former client. (Rule 3-310(A).) The "informed written consent" requirement of rule 3-310(E) may not literally apply here. The State Bar's Standing Committee on Professional Responsibility and Conduct has indicated that the fact that a court presumes that counsel possesses material confidential information due to a substantial relationship between two representations does not necessarily mean that absent consent the counsel is subject to discipline under rule 3-310(E), because the rule requires the *actual* possession of confidential information. (Cal. State Bar, Com. on Prof. Responsibility, Ethics Opn. No. 1998-152, *Supra*, at p. 8, fn. 7 & fn. 8.) Nevertheless, the extent of disclosure required under the rule indicates that only an *informed* waiver of rights is adequate to protect the former client's interests. Under any standard or definition of informed waiver, the trial court did not abuse its discretion in finding Rodney's waiver inadequate. The waiver simply states that "I have been advised that a conflict of interest may exist with Mr. Hove representing Patrick Baylis. I am aware of this and herby [sic] waive any conflict of interest regarding same." This language reflects no awareness of the nature and seriousness of the conflict involved. As the trial court pointed out, the waiver does not specifically address any of the potential adverse consequences of the representation, including that Hove's representation of defendant would likely involve an effort to implicate him in the Hayward rape, including by undermining the DNA evidence that exonerated Rodney. At the second to last hearing on the motion to substitute, the trial court told Hove that he should consider supplementing Rodney's "fairly general" written waiver, but Hove declined to obtain a more detailed waiver. In the circumstances of this case, the trial court did not err in concluding that Rodney's waiver was inadequate and denying the motion to substitute on that ground.[3/]

Exh. H at 12-14.

The Court then distinguished state cases on which petitioner relied and stated:

3.      There also is no indication that Rodney received the advice of independent counsel in deciding whether to waive the conflict of interest, and the trial court never had an opportunity to question or admonish Rodney about the waiver. Such measures certainly would have made the waiver more reliable but may not be necessary to obtain a valid waiver from a former client who is not a codefendant.

1
2
3
4
5
6

>        In this case we are not confronted with an attempt by a
> defendant to overturn a conviction by raising a conflict that he could
> have-but did not-raise before the trial court. Neither are we
> confronted with an untimely motion to disqualify by a former client
> in a civil matter. Instead, we are dealing with denial of a motion to
> substitute due to the trial court's pre-trial concerns about the
> adequacy of a former client's waiver. Where a trial court preparing
> for a criminal trial is confronted with an actual conflict of interest that
> may affect the integrity of those proceedings, the trial court is not
> obligated to accept as adequate a consent or waiver in whatever form
> it appears.

7   Exh. H at 15.

8        The Court then addressed the constitutional issue as follows:

9
10
11
12
13

>        The "essential aim" of the Sixth Amendment to the United
> States Constitution "is to guarantee an effective advocate for each
> criminal defendant rather than to ensure that a defendant will
> inexorably be represented by the lawyer whom he prefers." (*Wheat
> v. United States* (1988) 486 U.S. 153, 159, 108 S.Ct. 1692, 100
> L.Ed.2d 140 (*Wheat* ).) Under the federal Constitution, trial courts are
> allowed "substantial latitude" in refusing a defendant's waiver of a
> conflict of interest.

14   Exh. H at 16.

15        The court then discussed state law principles and stated:

16
17
18
19
20

>        The question before us is not whether defendant could waive
> the conflict but whether the trial court could disqualify Hove to
> enforce ethical standards meant to protect Rodney's interests. That a
> defendant is "master of his own fate" does not mean that the trial
> court must disregard the interests of others potentially adversely
> affected by the representation and the effect of the conflict on the
> integrity of the judicial process. Defendant could not waive those
> considerations. [Citation.]

21
22
23
24
25
26
27

>        It is established that a criminal defendant's right to counsel of
> his or her choosing may be forced to yield in order to enforce the
> duty of confidentiality where the former client is a codefendant. As
> the Supreme Court explained in *Leversen v. Superior Court* (1983)
> 34 Cal.3d 530, 194 Cal.Rptr. 448, 668 P.2d 755, "An attorney is
> forbidden to use against a former client any confidential information
> that was acquired during that client relationship. [Citations.]
> Moreover, the attorney has a duty to withdraw, or apply to a court for
> permission to withdraw, from representation that violates those
> obligations. [Citation.] So important is that duty that it has been
> enforced against a defendant's attorney at the [insistence] of his
> former client (who was also a codefendant) even at the expense of
> depriving the defendant of his choice of counsel."[Citation.}
> . . .

28

1
2
3
4
5
6

Here, Rodney was a former indicted suspect who conceivably could have been prosecuted again had Hove been successful in implicating him or had Hove been successful in undermining the DNA evidence.[4/]  Although Rodney signed a declaration waiving the conflict of interest, there is no indication that Rodney was actually aware of the potential adverse consequences of the representation. Furthermore, this case involved denial of a motion to substitute rather than involuntary *removal* of a defendant's counsel. Removal of counsel poses a greater threat to the right to counsel because the removal interferes with an attorney-client relationship that has already been established. [Citation.]

7  Exh. H at  17-20

8  **A.    The Court's Ruling Is Not An Unreasonable Application of Clearly Established Federal Law**

9

10  **1.  Basic Principles**

11  In *Wheat v. United States,* 486 U.S. 153 (1988), the Supreme Court considered the issue of

12  "the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney

13

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.    Although the DNA evidence admitted at trial was ultimately quite powerful evidence implicating defendant and exonerating Rodney, the trial court's decision on the motion to substitute occurred during pretrial proceedings before that evidence was developed and when the ultimate dimensions and significance of the conflict of interest were difficult to predict. [Citation.] It appears that defendant would have us adopt a blanket rule that a conflict involving a former client who is not a codefendant will not justify denial of a motion to substitute so long as the defendant on trial freely and intelligently waives the conflict. It would seriously impact the integrity of the judicial process and subvert the basic purpose of the relevant standards of professional responsibility were we in every instance to compel trial courts to disregard defense counsel's serious ethical conflicts affecting nondefendant former clients in the name of preserving the defendant's right to choose counsel. [Citations.]Here, the trial court was faced with the possibility that Hove would use confidential information acquired during the representation of Rodney in order to implicate Rodney in the offenses with which defendant was charged. "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system." [Citations.] We conclude that where confronted with an actual and substantial conflict of interest involving counsel's duty of confidentiality to a former client, a trial court may exercise its discretion to disqualify the conflicted attorney absent an informed waiver from the former client.

is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy." 486 U.S. at 159. The Court began by stating that the Sixth Amendment right to counsel.

> . . . was designed to assure fairness in the adversary criminal process. Realizing that an unaided layman may have little skill in arguing the law or in coping with an intricate procedural system [citations], we have held that the Sixth Amendment secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime. [Citation.] We have further recognized that the purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial,' [citation], and that in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.' [Citation.] Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. [Citations.]

*Id*. at 158-159.

The Court rejected the defendant's argument that a waiver of the conflict by all affected defendants cures any problems created by the multiple representation.  It stated:

> [N]o such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice. Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. Both the American Bar Association's Model Code of Professional Responsibility and its Model Rules of Professional Conduct, as well as the rules of the California Bar Association (which governed the attorneys in this case), impose limitations on multiple representation of clients. [Citations.] Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation.

*Id.* at 160.

The Court concluded:

> [W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented. As the Court of Appeals for the Third Circuit stated in *United States v. Dolan*, 570 F.2d 1177, 1184 (1978):

"[W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver."

Unfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id*. at 162-163.

Thus, the *Wheat* Court recognized that the purpose of the Sixth Amendment was primarily to protect a defendant's interest in a fair trial. The Supreme Court also recognized that while one does have a right to counsel of choice, the scope of that right must be considered in the light of the defendant's right to effective counsel, as well as by the attorney's duty to another client, and the interests of the court in having trials conducted within the ethical guidelines of the profession. The *Wheat* court also noted that "trial courts confronted with multiple representations face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule. If a trial court agrees to the multiple representation, and the advocacy of counsel is thereafter impaired as a result, the

1 | defendant may well claim that he did not receive effective assistance." *Wheat,* 486 U.S. at 161[5/].

2 |         **2.        The State Court Reasonably Concluded That Hove Could Not
3 |                     Effectively Represent Petitioner Because Of His Duties To
                       Rodney**

4 |         Here, the interests of the two clients directly conflict.  Hove also had a substantial

5 | relationship with both clients, and there is a reasonable possibility that he would have faced a

6 | substantial risk of breaching confidentiality or  acting against the interests of one client to protect

7 | the other. There is also a substantial possibility that Hove would use the results of his work product

8 | in representing Rodney, against Rodney.

9 |         Petitioner does not appear to contend the contrary.  He does not contend that in finding a

10 | conflict the state courts unreasonably applied clearly established federal law or unreasonably

11 | determined the facts..  Petitioner also does not contend that the state courts erred in finding that the

12 | waiver by Rodney was not effective.  To the contrary, to the extent the state court's ruling was based

13 | on factual findings, those findings are entitled to  a presumption of correctness.  28 U.S.C. § 2254

14 | (4) (1).   Moreover, in dealing with such waivers, courts should indulge every reasonable

15 | presumption against the waiver of fundamental rights.  *Lockhart v. Terhune*,  250 F.3d, 1223-1232

16 | (9th Cir. 2001.)

17 |         Furthermore, the state courts could reasonably assume that Hove obtained confidential

18 | information from Rodney simply because of the nature of the relationship, even in the absence of

19 | an actual showing to that effect.  *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 -71 (2d

20 | Cir.1973.)

21 |

22 |

23 | ───────────────

24 |         5.  Where the claim is that the right for assistance of counsel of choice has been wrongly
denied, "it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish to establish
25 | a Sixth Amendment violation.  Deprivation of the right is complete when the defendant is
erroneously prevented from being represented by the lawyer he wants, regardless of the quality of
26 | the representation he received." *United States v. Gonzalez-Lopez*, __ U.S. ___, 126 S.Ct. 2557, 2563
(2006).  However, the Supreme Court recognized that "[n]othing we have said today casts any doubt
27 | or places any qualification upon our previous holdings that limit the right to counsel of choice,"
including the limitations set forth in *Wheat*.  *Id*. at 2565.
28 |

1   Rather, petitioner's contention before this Court is that he waived the conflict, and that the

2   court was required to accept his waiver.   Petitioner does not address the fact that the Court of

3   Appeal found that *Rodney's* waiver was not effective, a matter that in itself would support that

4   Court's decision.   Petitioner's argument also fails to consider the fact that the trial court has

5   substantial latitude to reject such waivers based on its informed judgment of the potential for such

6   conflict.   *See Wheat*, 486 U.S. at 164. *United States v. Gharbi*, 510 F.3d 550, 553-54 (5th Cir.

7   2007); *United States v. Voigt*, 89 F.3d 1050, 1074-75 (3d Cir. 1996).

8   Here, as the state court noted, there was a substantial potential for such conflict.  Moreover,

9   aside from the fact that the most promising line of defense was to attempt to implicate Rodney.

10   Another problem arose because, according to the prosecutor's representations, Hove claimed not

11   even to see a conflict. CT 329. Hove could hardly be expected to avoid something he could not

12   see.[6]

13   Although the California Court of Appeal did not rule on the effectiveness of petitioner's

14   waiver, there is also ample basis to conclude that petitioner's waiver was not an informed one, or

15   alternatively that the state courts could reasonably reject it.  Petitioner stated that he thought Hove

16   would represent him to his fullest ability, and that he waived any conflict with respect to any

17   information Hove might have obtained from Rodney. He then stated: "I believe this would be to my

18   advantage. " CT 338.

19   However, inherent in petitioner's waiver was the assumption that Rodney had given an

20   effective waiver. Otherwise. petitioner would not have any basis to assume that Hove would

21   represent petitioner to his fullest ability. This assumption however was false.  Rodney's waiver was

22   not effective.  Since Rodney's waiver was invalid, Hove had a duty to protect Rodney's interests.

23   Petitioner could not reasonably assume that Hove would disregard his duty to protect Rodney's

24   interests.

25   Second, petitioner's assertion that he thought it would be to his advantage to have Hove

26   

27   6. In a prior case involving Hove, a conviction was reversed because when he was faced
   with a similar type of conflict, Hove favored one client over the other, *Lockhart v. Terhune*, 250
28   F.3d at 1230.

Memorandum Of Points And Authorities In Support Of Answer - C 07-5791 CRB (PR)

1  represent him is not objectively reasonable. The main line of defense was that Rodney committed

2  the offense. Hove would then be in a position in which he would have to implicate Rodney to afford

3  effective representation to petitioner. It is improbable that it could be to petitioner's advantage for

4  Hove to blind himself to information he received from Rodney, or for Hove to avoid trying to

5  implicate Rodney. Had the waiver been accepted and had the court allowed Hove to represent

6  petitioner, petitioner would no doubt be arguing on appeal that the court abused its discretion in

7  doing so, or that he received ineffective assistance, as did the petitioner in *Lockhart v. Terhune*, 250

8  F.3d 1223.

9        At the very least,  Hove could not give petitioner an unfettered duty of loyalty because he

10  had to "pull his punches" on the main line of defense. He would have to balance Rodney's interests

11  against petitioner's in determining what line of investigation to pursue and what evidence to present.

12  There is no basis by which this Court, as a habeas court, could find that Hove could competently

13  represent petitioner without violating his duties to Rodney.

14        Thus, the California court's decision was not an unreasonable application of clearly

15  established federal law.

16                                          **II.**

17        **A FAILURE TO INSTRUCT ON A LESSER OFFENSE ON A**
     **NON-CAPITAL CASE DOES NOT PRESENT A FEDERAL**
18   **ISSUE AND IN ANY EVENT WAS NOT RAISED BEFORE**
     **THE CALIFORNIA SUPREME COURT**
19

20        Petitioner contends that the trial court erred in failing to instruct on the lesser included

21  offense of theft. Petitioner has cited only state law to support his claim that he is entitled to such

22  an instruction. He has not cited any federal authority in support of his claim. In fact there is no

23  federal constitutional duty to instruct on a lesser included offense in a non-capital case. *See Solis v.*

24  *Garcia,* 219 F.3d 922, 928-29 (9th Cir.2000).   Moreover, petitioner did not request such an

25  instruction, and he did not defend on the  theory that he committed theft rather than robbery.

26        Moreover, even if petitioner had raised a federal claim, the claim is unexhausted, because

27  petitioner did not raise this issue in his Petition for Review. *Baldwin v. Reese,* 541 U.S. 27, 29,

28  (2004); *Davis v. Silva*, 511 F.3d 1005, 1008-09 (9th Cir.2008); *Farmer v. Baldwin*, 497 F.3d 1050,

1053 (9th Cir. 2007.)

Even aside from these points, the Court of Appeal rejected this claim stating that "the victim testified that she was aware that defendant was searching through her pockets. No evidence supports defendant's suggestion that she was unaware of defendant's actions. Furthermore, the money was taken by force because the only reasonable assumption is that the victim did not attempt to stop defendant from taking her property because of the force that had already been used against her and the threat of further force." Exh. H at 21-22. This finding is entitled to a presumption of correctness. See *Menendez v. Terhune*, 422 F.3d 1012, 102a (9th Cir. 2005). In view of the state court's findings there was no basis for a lesser offense instruction, and even if there was, the failure to so instruct was not prejudicial.

## CONCLUSION

Accordingly, respondent respectfully requests that the judgment be affirmed.

Dated: April 14, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

PEGGY S. RUFFRA
Supervising Deputy Attorney General


ALLAN YANNOW
Deputy Attorney General

Attorneys for Respondent

AY/cfl/eaw
SF2008400532
40228676.wpd

1

# TABLE OF CONTENTS

2

**Page**

3  STATEMENT OF THE CASE                                                         1

4  STATEMENT OF FACTS                                                            2

5         The Prosecution's Case                                                 2

6         The Defense Case                                                       3

7  STANDARD FOR REVIEW                                                           4

8  ARGUMENT                                                                      4

9      **I.  THE STATE COURT'S FINDING THAT COUNSEL OF CHOICE SUFFERED FROM A CONFLICT OF INTEREST THAT WAS NOT EFFECTIVELY WAIVED WAS NOT AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW**                                                   4

10

11

12      A.  The Court's Ruling Is Not An Unreasonable Application of Clearly Established Federal Law                               12

13

      1.  Basic Principles                                            12

14

      2.  The State Court Reasonably Concluded That Hove Could Not Effectively Represent Petitioner Because Of His Duties To Rodney                                                    15

15

16

17      **II.  A FAILURE TO INSTRUCT ON A LESSER OFFENSE ON A NON-CAPITAL CASE DOES NOT PRESENT A FEDERAL ISSUE AND IN ANY EVENT WAS NOT RAISED BEFORE THE CALIFORNIA SUPREME COURT**                              17

18

19  CONCLUSION                                                                   18

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

**Cases**

4
*Baldwin v. Reese*
541 U.S. 27 (2004)                                                                        17

5

*Brecht v. Abrahamson*
6      507 U.S. 619 (1993)                                                                       4

7      *Emle Industries, Inc. v. Patentex, Inc.*
478 F.2d 562 (2d Cir.1973)                                                                15

8

*Farmer v. Baldwin*
9      497 F.3d 1050 (9th Cir. 2007)                                                             17

10     *Flatt v. Superior Court*
(1994) 9 Cal.4th 275                                                                       7

11

*Leversen v. Superior Court*
12     (1983) 34 Cal.3d 530
194 Cal.Rptr. 448, P.2d 755                                                               11

13

*Lockhart v. Terhune*
14     (9th Cir.2001) 250 F.3d 1223                                                          9, 15, 17

15     *Lockyer v. Andrade*
538 U.S. 63 (2003)                                                                         4

16

*Menendez v. Terhune,*
17     422 F.3d 1012 (9th Cir. 2005)                                                             18

18     *Miller-El v. Cockrell*
537 U.S. 322 (2003)                                                                        4

19

*Solis v. Garcia*
20     219 F.3d 922 (9th Cir.2000)                                                               17

21     *United States v. Dolan*
570 F.2d 1177 (1978)                                                                      13

22

*United States v. Gharbi*
23     510 F.3d  550 (5th Cir. 2007)                                                             16

24     *United States v. Gonzalez-Lopez, __ U.S. ___*
126 S.Ct. 2557 (2006)                                                                     15

25

*Wheat v. United States*
26     (1988) 486 U.S. 153, 108 S.Ct. 1692
100 L.Ed.2d 140 (*Wheat* )                                                             11, 14

27

*Williams v. Taylor*
28     529 U.S. 362 (2000)                                                                       4

## TABLE OF AUTHORITIES  (continued)

**Page**

*Woodford v. Visciotti*
537 U.S. 19 (2002) (per curiam).                                              4


**Constitutional Provisions**

United States Constitution
          Sixth Amendment                                              8, 11-14

**Statutes**

28 U.S.C.
          § 2254 (d) (1)                                                       4
          § 2254 (d) (2)                                                       4

Business & Professional Code
          § 6068, subd. (e)                                                    7

Penal Code
          § 208, subd. (d)                                                     1
          § 211                                                                1
          § 261, subd. (a)(2)                                                  1
          § 289                                                                1
          § 667.61, subds. (d)(2) and (e)(1)                                   1
          § 667.61, subd. (e)(4)                                               1
          § 12022.3                                                            1
          § 12022.5                                                            2

**Other Authorities**

American Bar Association's Model Code
of Professional Responsibility and its
Model Rules of Professional Conduct                                          13

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)                 4

Cal. State Bar, Com.on Prof. Responsibility
Ethics Opn. No. 1998-152 (1998) p. 5                                          8

California Bar Association                                                    13

State Bar Rules Prof. Conduct, rule 3-310                                     7