IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK BAYLIS,  )<br>　　　　Petitioner,  )<br>　vs.　　　　　　　)<br>JAMES TILTON, Warden,  )<br>　　　　Respondent.  )<br>_____  ) | No. C 07-5791 CRB (PR)<br><br>ORDER DENYING PETITION<br>FOR A WRIT OF HABEAS<br>CORPUS |

Petitioner Patrick Baylis, a state prisoner incarcerated at California State Prison, Solano, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction from Alameda County Superior Court. For the reasons set forth below, the petition is denied.

## STATEMENT OF THE CASE

In October 2003, the District Attorney for the County of Alameda filed an information alleging that petitioner committed four counts of rape (counts 1-4), one count of penetration with a foreign object (count 5), one count of forcible oral copulation (count 6), one count of kidnapping with the intent to commit rape or oral copulation (count 7), and one count of robbery (count 8). The information

also alleged enhancements to each of these counts. As to counts one through six, it alleged that petitioner kidnapped the victim and that the movement of the victim substantially increased the risk to her, and that petitioner personally used a firearm. As to counts seven and eight, it alleged that petitioner personally used a firearm.

Well before trial, petitioner requested that the court substitute Richard Hove as counsel of record in place of appointed counsel Michael Berger. The trial court denied this motion, and Hove did not represent petitioner at trial. A jury found petitioner guilty of all eight counts and found that the alleged enhancements were true. In April 2004, the trial court sentenced petitioner to a prison term of 44 years to life.

Petitioner appealed to the California Court of Appeal, contending that the trial court erred in denying his motion to substitute counsel and in failing to instruct the jury on the lesser-included offense of theft.

On May 24, 2006, the California Court of Appeal rejected petitioner's contentions and affirmed the judgment of the trial court. On September 13, 2006, the California Supreme Court denied review.

On November 14, 2007, petitioner filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Per order filed on February 12, 2008, the court found that the petition, liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

**STATEMENT OF THE FACTS**

The California Court of Appeal summarized the facts of the case as

2

follows:

A. *The Prosecution Case*

On the morning of February 23, 1997, as the victim was walking to work, a man she described as Black and heavyset walked toward her. He grabbed her arm, put his hand over her mouth, and put a gun to her cheek. He told her not to scream or he would kill her, and he told her to keep walking.

They walked through a parking lot and he covered her face with her jacket. The assailant forced her into a car and drove her to an apartment in Hayward. He led her to a walk-in closet, covered her eye with a t-shirt, and told her to take off her clothes. He forced her to have intercourse in the closet and on a mattress in another room, and, holding a gun to her head, made her orally copulate him. As the assailant handed the victim her clothes, she heard him go through her pockets. She later discovered that approximately seventeen dollars were missing. The assailant told the victim that he should just kill her, led her back to the mattress, and forced her to have intercourse again.

They left the apartment. The assailant drove for a while and told the victim to get out of the car. She contacted the police, describing her assailant as a Black male in his early thirties, five feet five inches tall, about 200 pounds, with a full beard and closely cut hair.

In a photo lineup, the victim picked out defendant's brother, Rodney Baylis, as her assailant. She was not confident of the identification, although she did not say so that day to the detective in charge of the investigation, Frank Daley. She did tell Audrey Pinkney, who accompanied her to the police station, that the photo she picked out resembled her assailant but that she did not really think it was him.

One night about a month later, the victim saw the car her assailant had driven parked across the street from her house. She saw three men approach the car and told Pinkney, with whom she was living, that one of the men was her assailant. They called the police, who arrived soon afterwards and drove the victim and Pinkney to where the car had been stopped by other officers. The victim identified defendant as her assailant. One of the officers said she was confusing defendant with his brother, but the victim never changed her mind.

Because Detective Daley had identified Rodney as the primary suspect in the rape, defendant was not taken into custody. Another officer who was present during the identification admitted that he falsely wrote in his report that the victim did not make an identification. He testified that Daley asked him to write a supplemental report falsely stating that the victim reported that the

3

person the police had detained looked like the assailant but that the assailant was actually shorter (defendant is over six feet tall and Rodney is approximately five and a half feet tall).  A couple of days later the victim told Daley that defendant was her assailant; he corrected her, admonishing that her assailant was actually the defendant's brother, whom she had identified in the photo line-up.

In June 1999, DNA analysis of a semen sample on the victim's underpants excluded Rodney.  Defendant and the victim's boyfriend, Robert Pinkney, could not be excluded as sources of the semen.  Assuming Robert Pinkney was one source of the semen, the odds of a person taken at random being another contributor were approximately one in 690 billion Caucasian males and one in 10 billion African-American males.  Not assuming that Robert Pinkney was a source of the semen, the odds of a person taken at random being on the contributors was one in 8,200 Caucasian males and one in 890 African-American males.

Based on information obtained from a car dealership, the police determined that the car the assailant drove matched the description of a 1996 Hyundai registered to a Cathrell Golston.  The investigation led the police to an apartment on Vermont Street in Hayward, which the victim subsequently identified as the location where she was raped.  The victim's and defendant's fingerprints were found in the Vermont Street apartment; Rodney's were not.  Golston lived in the Vermont Street apartment but moved out before February 23, 1997.   Golston previously was in a romantic relationship with defendant.  The romantic relationship ended in December 1996, but she continued to allow defendant to drive her car and defendant had keys to the Vermont Street apartment.  Rodney had never been to the apartment.

B. *The Defense Case*

Defendant challenged the victim's identification.  The parties stipulated that a victim-witness assistance counselor would testify that the victim never told her that Rodney was not her assailant and did not express any doubt about the identification of Rodney.  Similarly, defendant's sister testified that she saw the victim at Rodney's preliminary hearing, and the victim saw defendant and did not say anything about him.

Defendant testified.  He denied raping, kidnapping, or having any contact with the victim.  He did admit that he had a key to Golston's apartment on Vermont Street and that he drove her car with permission.  The night before the victim was kidnapped and raped, the defendant picked up Rodney from a BART station and gave him Golston's car, as well as the keys to the apartment on Vermont Street. Later that night, defendant and two friends, Mike and Tanya, went to a bowling alley in Hayward.  Afterwards, they went to the Vermont Street apartment, and defendant had sex with Tanya.  Defendant left the apartment early the next morning.

4

> In February 1997, defendant's hair was about three or four inches long, not closely cut. He had a goatee but not a full beard. He went to the police department voluntarily after he heard the police were looking for Rodney. He was interviewed by two detectives but was not arrested.

*People v. Baylis*, No. A106217, slip op. at 2-5 (Cal. Ct. App. May 24, 2006) (Resp't Ex. H).

## DISCUSSION

A. <u>Standard of Review</u>

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Id.*

B.  Claims & Analysis

Petitioner raises two claims for relief under § 2254: (1) that the trial court erred in denying his motion to substitute counsel, and (2) as to count 8 (robbery), that the trial court erred in failing to instruct the jury sua sponte on the lesser-included offense of theft.

    1.  Denial of substitution of counsel

Petitioner claims that the trial court violated his Sixth Amendment right to choice of counsel when it denied his motion to substitute in Richard Hove as his lawyer. Pet. 6. This claim is without merit.

The "essential aim" of the Sixth Amendment "is to guarantee an effective

advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988).  The Amendment comprehends the right to select and be represented by one's preferred attorney, but that right is circumscribed in several respects.  *Id.* at 159.  The presumption that a criminal defendant may have counsel of his choice "may be overcome not only by a demonstration of actual conflict [of interest] but by a showing of a serious potential for conflict."  *Id.* at 164.  Where a defendant seeks to waive any such conflict, trial courts are allowed "substantial latitude" in refusing such a waiver in order to preserve the integrity of the proceedings. *Id.* at 162-63.

    The state trial court denied petitioner's request to substitute in Richard Hove as his counsel because it found a conflict of interest.  Hove had represented petitioner's brother Rodney Baylis, and the defense strategy at trial was likely to be that Rodney, rather than petitioner, had committed the crimes.  The court also found that Rodney had not adequately waived the conflict of interest.

    The California Court of Appeal summarized the facts underlying petitioner's claim as follows:

> In 2003, well before trial, defendant requested that Richard Hove be substituted as counsel of record in place of appointed counsel Michael Berger.  The prosecution opposed the request on the ground that Hove had previously represented Rodney in prosecutions for sexual assaults that occurred in Alameda in August 1996 and in Oakland in April 197.  The rape at issue in this case occurred in Hayward in February 1997.  Originally Rodney was charged with the Hayward offenses as well, and the victim identified Rodney as her assailant at the preliminary hearing, but the charges were dismissed after DNA analysis implicated defendant.
>
> Hove never represented Rodney in relation to the Hayward offenses.  Rodney's attorney at the preliminary hearing on the charges arising out of the Alameda, Oakland, and Hayward incidents was Roget Patton.  Hove represented Rodney at trial for the Alameda and Oakland incidents.  Hove raised a mistaken identity defense and pointed to Patrick as the assailant who

committed the Oakland sexual assault. Rodney testified that the last time he had seen the gun used in the Oakland assault Patrick had it. Hove attempted to question Rodney about the misidentification in *this* case, but the trial court did not allow the questioning. Hove called Patrick as a witness, and he admitted ownership of the gun used in the Oakland assault but refused to answer whether he took the gun to the store where the rape took place; the trial court struck Patrick's testimony about the gun. In closing, Hove argued that Patrick was responsible for the Oakland assault. Rodney was convicted of both the Alameda and Oakland offenses.

The trial court found that an actual conflict of interest would exist were Hove to represent defendant. The trial court explained: "Rodney Baylis, defendant's brother, was originally identified as the perpetrator of the crimes for which defendant now stands accused. The sexual assault in Oakland, for which Rodney Baylis was convicted, occurred within a few months of the instant incident. Therefore, notwithstanding the alleged DNA evidence, mistaken identification remains a potentially viable defense in this case. Defendant admits that he may introduce evidence that his brother Rodney Baylis, committed the offenses in this case . . . Mr. Hove will be placed in the untenable position of presenting evidence inculpating his former client, Rodney Baylis, directly contradicting the position taken at Rodney Baylis' trial, in which Mr. Hove attempted to prove that Patrick Baylis committed this rape. (The Court notes that double jeopardy has not attached to Rodney Baylis in this case.) [¶] Other potential conflicts of interest exist. The District Attorney asserts that he may call Mr. Hove as a witness in this case because, during Mr. Hove's representation of Rodney Baylis, Mr. Hove had discussions with the defendant Patrick Baylis regarding the events involving the instant charges. Those discussions are not privileged attorney client communications because the defendant was not Mr. Hove's client at the time. Furthermore, the District Attorney points out the possibility that Mr. Hove's privileged communications with Rodney Baylis may be subject to disclosure at trial, given that Rodney Baylis, as Hove's former client, must also waive the conflict."

Defendant submitted two declarations purporting to waive the conflict of interest. The court appointed independent counsel to advise defendant regarding the conflict. Independent counsel was charged with explaining to defendant the "existence, implications, and ramifications of having Mr. Hove represent him in this manner and to explain the consequences of defendant's purported waiver of conflict-free counsel." The trial court held two hearings on the issue and questioned defendant extensively regarding his understanding of Hove's conflict of interest at each hearing. Ultimately, the trial court found that defendant knowingly and intelligently waived the conflict of interest.

However, the trial court denied the substitution request because it

8

> found that Rodney had not adequately waived the conflict. The court concluded that the Rules of Professional Conduct required Hove to obtain Rodney's consent before undertaking the representation of defendant. The court emphasized its "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." The sum of Rodney's declaration read, "I understand that Patrick Baylis is now seeking to have Mr. Hove represent him. Since I was represented by Mr. Hove and was charged with these offenses, I have been advised that a conflict of interest may exist with Mr. Hove representing Patrick Baylis. I am aware of this and herby [sic] waive any conflict of interest regarding same." After explaining the inadequacy of Rodney's waiver and reviewing case authority, the trial court concluded: "Mr. Hove's former client, Rodney Baylis, has not submitted an intelligent and knowing waiver of the conflict of interest nor has he waived the confidentiality of his attorney-client communications. When representing Rodney, Mr. Hove attempted to place responsibility for the instant charges upon defendant. Now, he seeks to implicate his former client for these crimes. To that end, Mr. Hove will have the benefit of what he learned when he represented Rodney at trial. Mr. Hove may be called to testify in this case and could possibly be forced to disclose privileged communications. Under these facts, the Court finds Rodney Baylis' written waiver to be wholly insufficient and further find that Mr. Hove's representation of Patrick Baylis, if allowed, poses a significant threat to the integrity of the judicial process."

*People v. Baylis*, slip op. at 6-9 (emphasis in original) (footnotes omitted).

The California Court of Appeal agreed with the trial court that there was a conflict of interest requiring waiver. The court explained:

> Defendant contends that the trial court erred in concluding that there was a conflict requiring a waiver from Rodney. We disagree. Professional ethics demand that an attorney avoid conflicts of interest in which duties owed to different clients are in opposition. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 282 & fn. 2 (*Flatt*); State Bar Rules Prof. Conduct, rule 3-310.) A conflict of interest may arise from an attorney's concurrent or successive representation of clients with adverse interests. (*Flatt*, at ¶. 283-284.) These two situations implicate distinct ethical concerns and public policies. (*Ibid.*)
>
> The trial court focused exclusively on rule 3-310(C), which relates to concurrent representation and requires informed written consent from clients where an attorney seeks to represent in a single matter multiple clients with potential or actual conflicts or where an attorney seeks to represent clients with adverse interests in separate matters. (Rule 3-310(C).) Concurrent representation of clients with adverse interests compromises an attorney's duty of loyalty.

(*People ex rel. Dept of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 (*SpeeDee Oil*).) Defendant contends that his substitution request did not implicate rule 3-310(C) because Hove did not seek to represent defendant and Rodney concurrently either in a single matter or in separate matters. Respondent counters only that the "record does not affirmatively show that Hove was not representing Rodney in some capacity" at the time the trial court considered the substitution request. On this record, we cannot determine whether the substitution request would have created a concurrent representation conflict implicating rule 3-310(C).

Whether or not granting the substitution request would have led to a concurrent representation, it is clear that the substitution request implicated ethical concerns applicable to the successive representation of clients with adverse interests. (See rule 3-310(E).) In the successive representation context, "the chief fiduciary duty value jeopardized is that of client *confidentiality*," not loyalty. (*Flatt*, *supra*, 9 Cal.4th at p. 283; accord, *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146.) The former client's expectation of confidentiality must be preserved to ensure "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." (*SpeeDee Oil*, at p. 1146.) The attorney must maintain those confidences inviolate and preserve them at every peril to himself or herself. (Bus. & Prof. Code, § 6068, subd. (e).) Because of this duty, an attorney in actual possession of material confidential information from a former client may not represent an adverse party without the former client's consent. (Rule 3-310(E).) Rule 3-310(E) addresses the conflict between a lawyer's duty to use all information at his or her disposal in order to represent a current client competently and the lawyer's continuing duty of loyalty to a former client with respect to information obtained during the course of the prior representation. (See State Bar Com. Prof. Resp., Ethics Opn. 1998-152 at p. 5.)

When a conflict arises out of the successive representation of a former and a current client, disqualification turns on whether there is a substantial relationship between the former representation and the current representation. (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1146; *Flatt*, *supra*, 9 Cal.4th at p. 283.) "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory. . . ." (*Flatt*, at p. 283.) A substantial relationship is said to exist when it appears, by virtue of the nature of the former representation or the relationship of the attorney to his former client, that confidential information material to the current representation "would normally have been imparted to the

10

1
2
3

attorney." (*Pour Le Bebe, Inc. v. Guess? Inc.* (2003 112 Cal.App.4th 810, 823 (*Pour Le Bebe*).) The court should focus on the similarities in the facts involved in the two representations, the legal question posed, and the nature and extent of the attorney's involvement in each case. (*Ibid.*)

4
5
6
7
8

Here, the trial court stated, "When representing Rodney, Mr. Hove attempted to place responsibility for the instant charges upon defendant. Now, he seeks to implicate his former client [Rodney] for these crimes. To that end, Mr. Hove will have a benefit of what he learned when he represented Rodney at trial." Reasonably interpreted, this is an implicit finding that due to a substantial relationship between the two representations, it can be presumed that Hove obtained confidential information material to the prosecution of defendant.

9
10
11
12
13
14
15
16
17
18
19
20
21
22

Defendant contends that there is no substantial relationship between the two representation because the charges against Rodney for the Hayward rape had been dismissed by the time Hove became Rodney's attorney. But defendant disregards the undisputed facts that, in representing Rodney, Hove sought to implicate defendant in the Oakland sexual assault and to introduce evidence of the misidentification of Rodney in the Hayward case. Both representations involved the Hayward offenses, the subsequent police investigation, and misidentification by the victim; both representations involved the legal strategy of mistaken identity between the brothers; and Hove was intimately involved with the former representation as trial counsel for Rodney on the Alameda and Oakland offenses. (See *Pour Le Bebe*, *supra*, 112 Cal.App.4th at p. 823.) In preparing for trial, Rodney would normally have imparted confidences to Hove, for example, regarding his whereabouts at the time of the Hayward kidnapping and rape; any involvement he had before, during, or after the crime; his knowledge of any of the persons or locations involved in the crime; any information inculpating or exculpating defendant in the offenses; and any insights he had about mounting a defense based on the physical similarities between the brothers. On the undisputed facts, the trial court properly concluded that there is a substantial relationship between the former representation of Rodney and the proposed representation of defendant. Hove was disqualified from representing defendant, absent an effective waiver of the conflict by Rodney.

23
24
25
26
27

*People v. Baylis*, slip op. at 9-12 (emphasis in original) (footnotes omitted).

The California Court of Appeal also agreed with the trial court that Rodney's waiver of the conflict of interest was inadequate:

Defendant contends that even if there was a conflict of interest arising from Hove's former representation of Rodney, Rodney waived the conflict. The trial court concluded that Rodney's brief

28

11

written waiver was inadequate, stating "[Rodney's waiver] is not the full and complete, knowing and intelligent waiver that this Court believes is required here.  Rodney Baylis does not acknowledge the possibility that his brother, Patrick, will seek to inculpate him as the perpetrator of these offenses.  The waiver makes no mention of the possibility that the District Attorney may attempt to call Mr. Hove as a witness or that Mr. Hove may be forced to disclose otherwise privileged attorney-client communications made to Mr. Hove. . . . The waiver is silent as to the possibility that information that Mr. Hove gained while representing Rodney may be used to assist Patrick, to Rodney's possible detriment.  In sum, in contrast to Patrick Baylis' waiver, Rodney's waiver contains no evidence that he is aware of the drawbacks to waiving the conflict of interest."

Denial of defendant's substitution request was effectively a determination that Hove was disqualified from representing Patrick. The trial court's power to disqualify an attorney derives from Code of Civil Procedure section 128, subdivision (a)(5), which authorizes a trial court to "control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it. . . ."  (See *People v. Jones* (2004) 33 Cal.4th 234, 244, fn. 2 (*Jones*).)  This section applies in criminal cases, and the trial court's decision is reviewed for abuse of discretion.  (*Ibid.*)  The trial court's authority to deny a motion to substitute rests on similar grounds and should be given similar deference on appeal.

We conclude that the trial court did not abuse its discretion in requiring an *informed* waiver from Rodney in the circumstances of this case.  Where a defendant seeks to waive his counsel's conflict of interest, the waiver must be a knowing and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences."  (*People v. Mroczko* (1983) 35 Cal. 36 86, 109-110.)  A waiver may be properly taken where the court has assured itself that (1) the defendant has discussed the potential drawbacks of joint representation with his attorney or outside counsel, (2) the defendant has been made aware of the dangers and possible consequences of joint representation in the case, (3) the defendant knows of his right to conflict-free representation, and (4) the defendant voluntarily wishes to waive that right. (*Id.* at p. 110). That exacting standard is calculated to ensure a legitimate waiver of a defendant's constitutional right to conflict-free counsel and to insulate any conviction from a later challenge on appeal based on the conflict. (See *Alcocer v. Superior Court* (1988) 206 Cal.App.3d 951, 959.)

Also instructive is the standard for former client consent under the Rules of Professional Conduct.  Rule 3-310(E) requires the former client's "informed written consent" to any subsequent adverse representation implicating the duty of confidentiality.   Such consent requires the former client's written agreement to the

>representation following written disclosure of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the former client. (Rule 3-310(A).) The "informed written consent" requirement of rule 3-310(E) may not literally apply here. The State Bar's Standing Committee on Professional Responsibility and Conduct has indicated that the fact that a court presumes that counsel possesses material confidential information due to a substantial relationship between two representations does not necessarily mean that absent consent the counsel is subject to discipline under rule 3-310(E), because the rule requires the *actual* possession of confidential information. (State Bar Com. Prof. Resp., Ethics Opn. 1998-152, at p. 8, fn. 7 & fn.8.) Nevertheless, the extent of disclosure required under the rule indicates that only an *informed* waiver of rights is adequate to protect the former client's interests.
>
>Under any standard or definition of informed waiver, the trial court did not abuse its discretion in finding Rodney's waiver inadequate. The waiver simply states that "I have been advised that a conflict of interest may exist with Mr. Hove representing Patrick Baylis. I am aware of this and herby [sic] waive any conflict of interest regarding same." This language reflects no awareness of the nature and seriousness of the conflict involved. As the trial court pointed out, the waiver does not specifically address any of the potential adverse consequences of the representation, including that Hove's representation of defendant would likely involve an effort to implicate him in the Hayward rape, including by undermining the DNA evidence that exonerated Rodney. At the second to last hearing on the motion to substitute, the trial court told Hove that he should consider supplementing Rodney's "fairly general" written waiver, but Hove declined to obtain a more detailed waiver. In the circumstances of this case, the trial court did not err in concluding that Rodney's waiver was inadequate and denying the motion to substitute on that ground.

*People v. Baylis*, slip op. at 12-14 (emphasis in original) (footnotes omitted).[1]

The court of appeal concluded that, "[w]here a trial court preparing for a criminal trial is confronted with an actual conflict of interest that may affect the integrity of those proceedings, the trial court is not obligated to accept as adequate a consent or waiver in whatever form it appears." *Id.* at 15.

---

[1] The state courts also expressed concern that the waiver signed by Rodney was too similar to a waiver that was the subject of a reversal by the Ninth Circuit in another case involving Hove and his representation of a criminal defendant where Hove had a conflict. *See People v. Baylis*, slip op. at 12 n.8 (citing *Lockhart v. Terhune*, 250 F.3d 1223 (9th Cir. 2001)).

13

The California Court of Appeal's rejection of petitioner's choice of counsel claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor did it involve an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).  The court of appeal reasonably concluded that Hove could not effectively represent petitioner because of his duties to Rodney Baylis.  If Hove represented petitioner, there would be a significant possibility that he would have to draw upon, if not divulge, confidential information obtained in the course of his representation of Rodney.  Hove, however, was obligated not to enter into a relationship that would jeopardize the duty of confidentiality that he owed to his clients.  *Cf. United States v. Stites*, 56 F.3d 1020, 1025 ( 9th Cir. 1995) (attorney is "bound by her duty to her former client not to enter into a relationship where she would, almost by necessity, have to draw on knowledge that she had obtained in the earlier relationship").  The court of appeal reasonably concluded that this conflict of interest disqualified Hove from representing petitioner.  *Accord Wheat*, 486 U.S. at 164 (defendant's choice of counsel may be overcome by showing of "actual conflict" or "potential for conflict").

The California Court of Appeal also reasonably declined to accept the proffered waivers.  A valid waiver of conflict must be voluntary, knowing, and intelligent.  *See Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *Lockhart v. Terhune*, 250 F.3d 1223, 1232 (9th Cir. 2001) (en banc).  To be knowing and intelligent, it must be given with full awareness of its consequences.  *Id.*  The court of appeal's determination that Rodney's brief waiver "reflects no awareness of the nature and seriousness of the conflict involved" is amply supported by the record.  And Hove's refusal to obtain a more detailed waiver from Rodney further supports this conclusion.  The court of appeal found petitioner's waiver valid, but

1 | rejected petitioner's choice of counsel claim in light of Rodney's invalid waiver.
2 | This rejection was neither contrary to, nor an unreasonable application of, clearly
3 | established Supreme Court precedent. *See* 28 U.S.C. § 2254(d). After all, the
4 | Supreme Court has clearly held that where "a court justifiably finds an actual
5 | conflict of interest," as the court of appeal did here, "there can be no doubt that it
6 | may decline a proffer of waiver." *Wheat*, 486 U.S. at 162. Petitioner is not
7 | entitled to federal habeas relief on his choice of counsel claim.

### 2. Instructional error

In connection with the robbery count, petitioner claims that the trial court erred by failing to instruct the jury sua sponte on the lesser-included offense of theft. Pet. 6. This claim is without merit.

The California Court of Appeal rejected petitioner's instructional error claim on the ground that "there was no substantial evidence from which the jury could have concluded that the offense was less than robbery." *People v. Baylis*, slip op. at 22. The court of appeal's rejection was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d). Although the Supreme Court has held that a defendant may be entitled to instructions for lesser-included offenses in a capital case, it has expressly declined to decide whether that holding extends to non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). Because the Court has "expressly left this issue an 'open question,'" the California Court of Appeal did not unreasonably apply clearly established federal law in rejecting petitioner's claim that the trial court's refusal to instruct the jury on theft as a lesser included offense of robbery violated his right to due process. *Alberni v. McDaniel*, 458 F.3d 860, 866 (9th Cir. 2006); *see*, *e.g.*, *Larson v. Palmateer*, 515 F.3d 1057,

15

1066 (9th Cir. 2008) (because Supreme Court expressly reserved the question of whether using evidence of prior crimes to show propensity for criminal activity could ever violate due process, state court's rejection of claim did not unreasonably apply clearly established federal law). Petitioner is not entitled to federal habeas relief on this claim because the "right [he] asserts has not been clearly established by the Supreme Court, as required by [28 U.S.C. § 2254(d)]." *Alberni*, 458 F.3d at 867.

## CONCLUSION

After a careful review of the record and pertinent law, the court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED: June 18, 2009

CHARLES R. BREYER
United States District Judge